**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews**

Civil Action No. 1:20-cv-00486-SKC

STEPHEN S. STUHMER,

    Plaintiffs,

v.

MICHAEL GIRDNER, and
PAUL GIRDNER,

    Defendants.

---

**ORDER RE: DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. 60]**

---

    From JetAway Aviation, LLC's inception in 2004, Plaintiff Stephen Stuhmer has been the president, CEO, and managing member of the company. JetAway was formed to pursue business ventures associated with the Montrose Regional Airport in Montrose, Colorado. In September 2015, JetAway's assets (real estate, leases, mineral rights, license agreements, fixed base operator equipment, and aviation fuel storage tanks) were combined with those of One Creative Place, LLC, to create Telluride Venture Partners, LLC. According to its operating agreement, Telluride had three members, Plaintiff and Defendants Michael and Paul Girdner.

    When they formed Telluride, Plaintiff and Defendants negotiated with M.C. Horning, Jr., to sell fifty percent of Telluride's assets to TSG Asset Holdings, LLC. At the closing, however, Defendants allegedly gave Horning a fraudulent document

1

purporting to be Telluride's operating agreement and which eliminated Plaintiff's interest in Telluride. According to the Amended Complaint, Defendants created the fraudulent operating agreement to misrepresent the members of Telluride to TSG, the Internal Revenue Service ("IRS"), and other third parties, and to leverage personal tax benefits for Defendants and deprive Plaintiff of his interest in Telluride's assets.

On February 22, 2020, following a state court proceeding affirming Plaintiff's membership in Telluride, Plaintiff filed this lawsuit asserting claims of fraud and fraudulent concealment, conversion, civil theft, and unjust enrichment, and seeking monetary (including exemplary) damages. [Dkt. 54.] After a period of discovery, Defendants filed their Motion for Summary Judgment. [Dkt. 60.] They argue Plaintiff's claims are barred by the statute of limitations. [Dkt. 60.] Plaintiff filed a Response on November 12, 2021. [Dkt. 61.] The Court, in its discretion, addresses the Motion without awaiting the Reply. The Court has reviewed the Motion, the Response, the entire record, and the applicable law. No hearing is necessary. For the following reasons, the Motion is DENIED.

## STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth

2

of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)).

## ANALYSIS

Plaintiff's claims are subject to two-year and three-year statutes of limitations. *See* Colo. Rev. Stat. § 13-80-101(c) (actions for fraud, misrepresentation, concealment, or deceit), (h) (actions of replevin or for taking, detaining, or converting goods or chattels); *Brody v. Bruner*, No. 19-CV-01091-RM-NRN, 2021 WL 4264055, at *3 (D. Colo. Sept. 20, 2021) ("[U]nder Colorado law, the statute of limitations for civil theft is two years."); *Sterenbuch v. Goss*, 266 P.3d 428, 437 (Colo. App. 2011) ("[U]njust enrichment is a form of relief in quasi-contract or contract implied in law, [and] the time within which to assert such a claim ordinarily is assessed under the three-year statute of limitations for contract actions.").

Defendants contend Plaintiff indisputably had knowledge of the facts forming the bases of his claims as early as April 7, 2016, and therefore, the claims accrued outside the limitations periods and are barred. [Dkt. 60 at p.7.] In support, Defendants cite evidence (primarily Plaintiff's deposition testimony) that Plaintiff received a 2015 K-1 that did not list him as a Telluride member. [*Id.*] And they rely on evidence Plaintiff knew (by at least January 31, 2017) Defendants provided TSG and Horning with an operating agreement listing Defendants as Telluride's only members. [*Id.*] In his Response, Plaintiff argues Defendants oversimplify the nature of his claims, and that his claims did not accrue until he was provided a copy of the

3

fraudulent operating agreement during the state court action in October 2018. [Dkt. 61.]

According to Plaintiff's allegations and the evidence cited and submitted with his Response, Defendants' alleged conduct included crafting the illegitimate operating agreement; fraudulently representing (to this day) Telluride's membership structure to the IRS; fabricating loan and assumption agreements; erroneously representing that JetAway had been terminated and Defendants had assumed its liabilities; and falsely holding themselves out as managers of JetAway and executing financial agreements on its behalf. Plaintiff cites evidence Defendants actively attempted to conceal the nature of their actions by refusing to provide him with tax and other documents that would have revealed the alleged fraud. Based on these facts, the Court agrees Plaintiff's claims appear more complex in context than Defendants acknowledge. At best, Defendants' evidence indicates Plaintiff learned of one small aspect of their alleged fraudulent scheme when he received the 2015 K-1. But disputed facts remain over whether that fact alone was sufficient the blow the lid on the entire or ultimate scheme such that Plaintiff can be held to have had the requisite knowledge at that time to trigger the statute of limitations.

In addition, while Plaintiff testified he received the 2015 K-1 and heard about the illegitimate operating agreement, he also testified he did not have knowledge of the extent of Defendants' actions, and they actively concealed their conduct from him. [Dkt. 60-1 at p.27.] Thus, Plaintiff's own deposition creates a disputed issue as to what Plaintiff knew, when he knew it, and the extent of that knowledge. Resolution

4

of this issue will inherently turn on Plaintiff's credibility, which is for the finder of fact to evaluate, not this Court. *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008) ("On summary judgment, a district court may not weigh the credibility of the witnesses.").

Furthermore, "[i]n the context of a fiduciary relationship, facts which would ordinarily require investigation may not excite suspicion, and the same degree of diligence is not required." *Hansen v. Lederman*, 759 P.2d 810, 812 (Colo. App. 1988). As members of an LLC, Plaintiff and Defendants owed fiduciary duties to one another. *Gagne v. Gagne*, 2019 COA 42, ¶ 26, 459 P.3d 686, 694, *cert. denied*, No. 19SC319, 2020 WL 996612 (Colo. Mar. 2, 2020) ("Members of a limited liability company formed under the Act also owe fiduciary duties to each other and to the company.") (citing *LaFond v. Sweeney*, 2012 COA 27, ¶ 38, 345 P.3d 932, *aff'd*, 2015 CO 3, 343 P.3d 939). Even if Plaintiff had knowledge something was amiss, given the fiduciary nature of their relationship, the Court cannot conclude he indisputably had notice of facts giving rise to a reasonable duty of inquiry into the alleged fraud, conversion, or civil theft. This evidence must be submitted to a jury.

*   *   *

For the foregoing reason the Motion for Summary Judgment is DENIED, and the case remains set for trial commencing on December 13, 2021.

Dated:      November 18, 2021

BY THE COURT:

_____
S. Kato Crews
U.S. Magistrate Judge