IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:20-cv-00486-SKC

STEPHEN S. STUHMER,

       Plaintiff,

v.

MICHAEL GIRDNER, and
PAUL GIRDNER,

       Defendants.

## ORDER

When JetAway Aviation, LLC was formed in 2004, Plaintiff Stephen Stuhmer was the president, CEO, and managing member of the company. JetAway was formed to pursue business ventures associated with the Montrose Regional Airport in Montrose, Colorado. In September 2015, JetAway's assets (real estate, leases, mineral rights, license agreements, fixed base operator equipment, and aviation fuel storage tanks) were combined with those of One Creative Place, LLC, to create Telluride Venture Partners, LLC. According to its operating agreement, Telluride had three members, Plaintiff and Defendants Michael and Paul Girdner.

After they formed Telluride, Plaintiff and Defendants negotiated with M.C. Horning, Jr., to sell 50 percent of Telluride's assets to TSG Asset Holdings, LLC. At

the closing, however, Defendants gave Horning a fraudulent document purporting to be Telluride's operating agreement, and which eliminated Plaintiff's interest in Telluride. According to Plaintiff, Defendants created the fraudulent operating agreement to misrepresent the members of Telluride to TSG, the Internal Revenue Service ("IRS"), and other third parties, and to leverage personal tax benefits for Defendants and deprive Plaintiff of his interest in Telluride's assets.

On February 22, 2020, following a state court proceeding affirming Plaintiff's membership in Telluride, Plaintiff filed this lawsuit asserting claims of fraud and fraudulent concealment, conversion, civil theft, and unjust enrichment, and seeking compensatory and punitive damages. Dkt. 54. Following discovery, Defendants moved for summary judgment on the basis that Plaintiff's claims were barred by the applicable statute of limitations. This Court denied the motion, concluding any question of whether Plaintiff had the requisite knowledge to commence the running of the statute of limitations turned on disputed issues of fact and Plaintiff's credibility, and therefore, required a jury trial. Dkt. 66.

Thereafter, this case was tried to a jury of nine. On August 24, 2023, the jury returned a verdict finding Michael Girdner liable to Plaintiff for false representation, nondisclosure or concealment, conversion, and civil theft. Dkt. 110. The jury found Paul Girdner liable only for conversion and civil theft. *Id*. With respect to damages, and as against each Defendant, the jury awarded Plaintiff $335,188 in noneconomic damages, $335,188 in economic damages, $575,000 in punitive damages, and $200 in

statutory damages related to civil theft, for a total award of $1,245,576.00 against each Defendant—or $2,491,152.00 in the aggregate. *Id.*

Defendants now seek a new trial or an order amending the judgment. Dkts. 120, 122. Plaintiff also seeks to amend the judgment for an award of prejudgment interest and treble damages.[1] Dkts. 124, 125. The Court has reviewed the briefing, the trial record, the docket, and the pertinent law. No hearing is necessary. For the following reasons, Defendants' requests for a new trial or amendment of the judgment are denied. Plaintiff's motion for treble damages is denied, but his request for prejudgment interest is granted.

## ANALYSIS

### A.   Motions for New Trial or to Amend Judgment (Dkts. 120, 122)

#### 1.   Sufficiency of the Evidence

Citing Fed. R. Civ. P. 59, Defendants make two arguments regarding the sufficiency of the evidence at trial. First, both contend—as they did in their motion for summary judgment—the unrefuted evidence establishes Plaintiff's claims are barred by the applicable statutes of limitations. Dkts. 120, 124 at pp.2-3. And with respect to Paul Girdner, Defendants contend the jury's award of punitive damages

---

[1] Plaintiff also seeks an award of attorney fees and costs. Dkt. 199. The Court will address that issue in a separate order.

3

against him is unsupported by the evidence. Dkt. 122 at p.10. Neither basis warrants amending the judgment.[2]

"[A] Rule 59(e) motion [to alter or amend the judgment] cannot be used to address the weight or sufficiency of the evidence." *Woods v. First Nat'l Bank of Durango*, 705 F. App'x 684, 689 (10th Cir. 2017) (citing *Elm Ridge Exploration Co. v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013)); *see also Velazquez v. Figueroa–Gomez,* 996 F.2d 425, 427 (1st Cir. 1993) ("We have found no authority supporting the proposition that a motion under Rule 59(e) may be used to reevaluate the weight of the evidence after a jury's verdict."). Rather, the proper vehicle for such an argument is Fed. R. Civ. P. 50(b), which seeks a *renewed* judgment as a matter of law. *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013).

Here, however, even if the Court were to regard the present motion as the functional equivalent of a Rule 50(b) motion, it would be to no avail. Defendants never made an initial motion for judgment as a matter of law under Rule 50(a), which is a prerequisite to a Rule 50(b) motion. *Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 738 (10th Cir. 2007) (holding that a "pre-verdict Rule 50(a) motion" is "a prerequisite to a post-verdict motion under Rule 50(b)"). Consequently, the Court denies Defendants' request to amend the judgment on these grounds.

---

[2] Although they are not explicit in what relief they seek with respect to these arguments, the Court presumes Defendants seek only amendment of the judgment. To be sure, seeking a new trial on these issues would inherently acknowledge there are questions of fact that should be submitted to the jury.

### 2. Motion for a New Trial

Under Fed. R. Civ. P. 59(a), a court may, on motion, grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Rule 59(a) motions are "not regarded with favor" and should be granted "only with great caution, being addressed to the sound discretion of the trial court." *United States v. Page*, 828 F.2d 1476, 1478 (10th Cir. 1987) (cleaned up). After a jury trial, a new trial may only be granted when the court "concludes that the jury's verdict was so against the weight of the evidence as to be unsupportable." *Bangert Bros. Const. Co. v. Kiewit W. Co.*, 310 F.3d 1278, 1299 (10th Cir. 2002) (citing *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1442-43 (10th Cir. 1988)).

Defendants contend they are entitled to a new trial because the Court made several erroneous evidentiary rulings and improperly gave the jury an agency instruction. And they argue the jury verdicts are inconsistent and improperly awarded Plaintiff double recovery.

#### a. Purported Trial Errors

When a party seeks a new trial based on a claim of the court's error, the court may grant the motion if it concludes that the "claimed error substantially and adversely" affected the party's rights. *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir. 1998). Federal Rule of Civil Procedure 61, however, provides that "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error

5

by the court or a party—is ground for granting a new trial," and that "the court must disregard all errors and defects that do not affect any party's substantial rights."

In their Motions, Defendants raise several purportedly erroneous evidentiary rulings they contend warrant a new trial. *See* Dkt. 120 at pp.3-10. They also argue this Court erred in giving a jury instruction on agency. After reviewing the instruction and this Court's evidentiary rulings, the Court concludes Defendants have failed to establish that the tendered jury instruction and evidentiary rulings substantially and adversely affected their rights such that a new trial is necessary. To be sure, Defendants rely solely on conclusory and speculative assertions that the evidence and agency instruction confused the jury. And further, Defendants have not cited a single case where a federal court granted a new trial based on the types of evidentiary rulings or tendering of a jury instruction on agency as Defendants argue here. Consequently, these issues will not be revisited and do not justify a new trial.[3]

**b.   Inconsistent Verdicts**

The jury found Michael Girdner liable under all four of Plaintiff's theories—conversion, fraud by misrepresentation or deceit, fraud by concealment, and civil

---

[3] As to the agency jury instruction, the existence of an agency relationship is a question of fact. *In re Bloom*, 634 B.R. 559, 576 (10th Cir. BAP (Colo.) 2021), *aff'd,* No. 22-1005, 2022 WL 2679049 (10th Cir. July 12, 2022). During the charge conference, the Court specifically observed that Michael Girdner's testimony could support a finding that Doug Black was his personal agent. Dkt. 135 at pp.11-12. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *In re Bloom*, 634 B.R. at 576.

theft—and found Paul Girdner liable for only conversion and civil theft. The jury also received two identical special verdict forms—one for each Defendant—where they could award Plaintiff damages attributable to the respective conduct of each Defendant; the jury ultimately awarded Plaintiff identical damages against each Defendant despite finding one Defendant liable on more claims than the other. Dkt. 110.

Defendants now contend the economic damages awards of $335,188 against each Defendant demonstrates the jury was confused and failed to follow the jury instructions. *See* Dkt. 120 at pp.10-12. Specifically, Defendants argue that in awarding damages for conversion, the jury impermissibly considered evidence of the JetAway Promissory Note;[4] there was testimony at trial that the note was valued at $350,000 in principle and $665,000 with interest. *Id*. They also contend the jury's award of identical damages against each Defendant, despite finding them liable under different theories, equates to an award of double damages. *Id*. Neither contention persuades.

The task of determining whether a jury's verdict is inconsistent is not done lightly. *Johnson v. Ablt Trucking Co.*, 412 F.3d 1138, 1143 (10th Cir. 2005). "In order to protect the jury's function, the courts must 'reconcile the jury's findings, by exegesis if necessary, . . . before [they] are free to disregard the jury's special verdict and [set]

---

[4] The Court concluded the promissory note had not been converted. *See* Dkt. 135 at pp.109-110.

the case for a new trial.'" *Id.* (quoting *Gallick v. Baltimore & Ohio R.Co.,* 372 U.S. 108, 119 (1963)).

To be irreconcilably inconsistent, the jury's answers must be "logically incompatible, thereby indicating that the jury was confused or abused its power." *Id.* (citing *Stone v. Chicago*, 738 F.2d 896, 899 (7th Cir.1984)). But a verdict may not be overturned merely because a court finds the "jury's resolution of the different questions in the case difficult, though not impossible, to square." *Id.* If there is any plausible theory supporting the verdict, a court must maintain the judgment. *Id.*

Concerning Defendants' argument that the jury impermissibly considered the JetAway Promissory Note when calculating damages, the Court rejects this as entirely speculative. First, this argument is not even supported by basic math. The promissory note was valued at $665,000 with interest. Divided equally between the two Defendants would result in an award of $332,500 against each Defendant if Defendants' argument were to hold water. That amount obviously does not equal the jury's award of $335,188 against each Defendant. Neither does Defendants' argument account for the evidence at trial of Plaintiff's additional damages in the form of attorney fees he incurred in tax court or the IRS settlement amount(s), both of which Defendants acknowledge—at least in part—were permissible economic damages for the jury to have considered. *See* Dkt. 120 at pp. 10-11. Including the evidence of those damages would result in damages closer to $425,200 per Defendant. The point being, Defendants' argument that the jury impermissibly considered the promissory note

when calculating damages for conversion is entirely speculative and not evident from the face of the special verdict forms when considering the evidence of Plaintiff's economic damages received at trial.

For example, in reviewing the trial transcript, the Court observes that over the course of the four-day trial, the jury heard testimony regarding a variety of dollar amounts for different categories of economic damages Plaintiff attributed to Defendants' conduct. *See e.g.*, Dkt. 132 at pp.72-73, 90; Dkt. 135 at pp.51, 64, 72. Consequently, it is not so obvious that the jury considered the promissory note at all when calculating damages for conversion. The Court will not reverse on this basis.

The Court next addresses Defendants' contention that the jury gave Plaintiff an impermissible double recovery and concludes no such error is apparent on the face of the verdict. "Jurors are presumed to follow their instructions." *Taylor v. Workman*, 554 F.3d 879, 893 (10th Cir. 2009) (citing *Zafiro v. United States*, 506 U.S. 534, 540–41 (1993)). The jurors in this case were properly instructed that they could award Plaintiff damages only once for the same injury or loss. Dkt. 107 at p.50. Although the jury found Michael liable for four claims and Paul only two, the conversion claim overlapped both Defendants. A plausible theory supporting the verdict is that the jury calculated one lump sum of damages suffered by Plaintiff and attributable to Defendants' conversion and then divided those damages equally between the Defendants. Thus, the Court declines to reverse the jury verdict on this ground.

9

*Johnson*, 412 F.3d at 1143 ("If there is any plausible theory that supports the verdict, the reviewing court must affirm the judgment.").

## B.    Plaintiff's Motions

Plaintiff seeks to amend the judgment for an award of treble damages and prejudgment interest on both his economic and noneconomic damages.

### 1.    Treble Damages (Dkt. 125)

In its post-trial Order discussing Plaintiff's proposed judgment, the Court noted Plaintiff sought an award of treble damages despite the fact the jury awarded him only statutory damages of $200 on his civil theft claims. Dkt. 114. Under the Colorado statute governing civil theft, "the owner [of stolen property] may recover two hundred dollars *or* three times the amount of the actual damages sustained by him, whichever is greater." Colo. Rev. Stat. § 18-4-405 (emphasis added). Here, the jury awarded Plaintiff $200 as against each Defendant for his claims of civil theft. The plain language of the statute mandates, therefore, a finding that the jury did not award any actual damages on these claims.

In his motion to amend the judgment, Plaintiff makes several arguments supporting his contention that the jury erred. Dkt. 125. The Court concludes Plaintiff has waived the issue.

During Plaintiff's closing argument, Plaintiff's attorney specifically invited the jury to award Plaintiff $200 on the civil theft claims:

```
12   the compensatory.  You will see in the civil -- in the theft
13   instruction, there's a special theft instruction, and you will
14   see what that says, and you can award anything you want or at
15   least $200 on that.
```

Dkt. 135 at p.174. To be sure, in showing and walking the jury through the special verdict form during his closing argument, Plaintiff's counsel wrote "$200" on the line designated for civil theft damages.[5] The jury did just as Plaintiff demonstrated and suggested; thus, Plaintiff is precluded from seeking reversal based on a purported error he induced.[6] *John Zink Co. v. Zink*, 241 F.3d 1256, 1259 (10th Cir. 2001) ("The invited error doctrine prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was error."). The legal ramification of Plaintiff's invitation to the jury is that this Court cannot now treble

---

[5] The Court also notes that instructing the jury to write anything they want or at least $200 was also incorrect. If Plaintiff wished for the jury to award him civil theft damages, he should have instructed the jury to write "0" on that line based on the plain language of the special verdict form.

[6] Furthermore, the jury instructions were clear regarding what an award of $200 for civil theft would mean with respect to a finding of actual damages. The Court presumes the jury understood these instructions when the jury purportedly followed Plaintiff's suggestion. *United States v. Poole*, 545 F.3d 916, 921 (10th Cir. 2008) ("As a matter of law, jurors are presumed to understand and follow instructions given to them.").

11

economic damages attributable to civil theft because the jury awarded none.[7] Plaintiff's Motion is denied.

### 2. Prejudgment Interest (Dkt. 124)

The Court now considers Plaintiff's request for prejudgment interest on his economic and noneconomic damages. "A federal court sitting in diversity applies state law, not federal law, regarding the issue of prejudgment interest." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1156 (10th Cir.2000) (citation omitted). In Colorado, "[t]he right to prejudgment interest, independent of an agreement to pay it, is statutory." *South Park Aggregates v. Northwestern National Insurance Co.*, 847 P.2d 218 (Colo. App. 1992). An award of prejudgment interest under Colorado law is "a ministerial act that is mandatory and does not require the exercise of judgment or discretion." *Todd v. Bear Valley Village Apts.*, 980 P.2d 973, 981 (Colo. 1999).

---

[7] As the Court discussed in analyzing Defendants' contentions, a logical interpretation of the jury award is that the jury calculated a sum of damages attributable to conversion and split the amount between the Defendants. With respect to whether a jury may award noneconomic damages for conversion, while special and consequential damages are not ordinarily awarded in conversion cases, the Court is not aware of any case law specifically prohibiting a jury from doing so. *See Rosen Novak Auto. Co. v. Hartog*, 168 Colo. 536, 538, 454 P.2d 932, 933 (1969) (affirming jury verdict for plaintiff in conversion action awarding special damages for "shock to their nerves and nervous system, great humiliation and embarrassment, loss or impairment of their credit, loss of use of their car, and loss of sleep and time"); *see also* Colo. Jury Instr., Civil 32:3 (notes on use).

### a. Economic Damages

In Colorado, Colo. Rev. Stat. § 5-12-102 serves as a "general prejudgment and postjudgment statute." *Farmers Reservoir and Irr. Co. v. City of Golden*, 113 P.3d 119, 133 (Colo. 2005) (citing *Great W. Sugar Co. v. KN Energy, Inc.*, 778 P.2d 272, 276 (Colo. App. 1989)). Known as the "wrongful withholding statute," it "applies in all actions that do not involve personal injury." *Romero v. Helmerich & Payne Int'l Drilling Co.*, No. 15-cv-00720-NYW, 2017 WL 5900361, at *3 (D. Colo. Nov. 30, 2017), *aff'd*, 768 F. App'x 838 (10th Cir. 2019). Pertinent here, the statute provides:

> (1) Except as provided in section 13-21-101, C.R.S., when there is no agreement as to the rate thereof, creditors shall receive interest as follows:
>
> (a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,
>
> (b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property. . . .

Colo. Rev. Stat. § 5-12-102. "[S]ection 5–12–102 is to be liberally construed to permit recovery of prejudgment interest." *Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1289 (10th Cir. 2005).

Defendants contend Plaintiff is not entitled to prejudgment interest because a claim of conversion requires only "interference" with a property right and does not require that property be "withheld." Dkt. 138 at p.2. They maintain, therefore, conversion damages do not fall under the umbrella of Colorado's prejudgment interest

13

statute. *Id.* They further argue that even if Plaintiff can recover prejudgment interest for conversion, he may only recover up to the point at which Plaintiff's interest in the converted property was restored. According to Defendants, Plaintiff's property was restored when the state court affirmed his ownership interest in Telluride.

Much like the arguments they made in their own Motions, Defendants again seem intent on sending this Court on a legal scavenger hunt sans map or flashlight. Their contentions are underdeveloped and unsupported by any authorities, case law or otherwise. To be sure, it is not at all clear there is any material difference between "interfering with" and "withholding" a person's property. And because it is not this Court's obligation to clothe Defendants' naked and bared assertions, the answer to this query shall remain a mystery. *See Am. Fam. Mut. Ins. Co. v. Tamko Bldg. Prod., Inc.*, 178 F. Supp. 3d 1121, 1127 (D. Colo. 2016) ("Plaintiff's argument in this regard is rather superficial and underdeveloped, which in itself would absolve the court of the obligation to address it substantively.")

Similarly, Defendants make no attempt to explain how the state court's order confirming Plaintiff's ownership interest in Telluride equates to a restoration of Plaintiff's tax benefits, particularly considering the evidence at trial that Defendants—via their filings with the IRS—were still denying Plaintiff any tax benefits associated with his ownership interests. *See e.g.*, Dkt. 149-1 at pp.183-84. Without more, neither of these arguments overcome Plaintiff's request for prejudgment interest.

Defendants also argue prejudgment interest is not recoverable on fraud and deceit claims or awards of future damages. They contend this Court should deny Plaintiff's request for prejudgment interest against Michael Girdner because the jury verdict does not distinguish what part of the money damages were allotted to Plaintiff's fraud and deceit claims and does not indicate whether the award includes future damages.

As with Defendants' previous argument regarding the promissory note, these contentions are again wholly speculative. Neither party objected to the special verdict forms, which permitted the jury to award one lump sum as opposed to itemizing dollar amounts for each claim and category of damages.[8] The award of damages is a determination for the jury, and to do as Defendants now request would be to invade that province. Armed with no more than Defendants' unsupported suppositions, the Court declines to invade. *See Curragh Queensland Min. Ltd. v. Dresser Indus., Inc.*, 55 P.3d 235, 242 (Colo. App. 2002), *as modified on denial of reh'g* (June 13, 2002) (Where seller did not object to special verdict form, it could "not now claim that the jury's…damage award improperly included future lost profits."); *Decker v. Browning–Ferris Industries*, 931 P.2d 436, 448 n.12 (Colo. 1997) (party's failure to raise specific objection to special verdict form, which allowed jury to award noneconomic damages for contractual claims, waived issue for purposes of appeal); *Bear Valley Church of*

---

[8] The special verdict form in this case tracks the language of the Colorado Pattern Jury Instructions regarding damages. *See* Colo. Jury Instr., Civil 6.1, 6.1A, 6.1B.

15

*Christ v. DeBose*, 928 P.2d 1315, 1328–30 (Colo. 1996) (party's failure to object to or tender instructions or verdict forms waived claim that instructions and verdict forms allowed inconsistent or duplicative jury awards).

Because Defendants arguments do not challenge Plaintiff's claimed accrual date or calculations, the Court will amend the judgment against each Defendant to award Plaintiff $144,719.62 in prejudgment interest on his economic damages.

### b. Noneconomic Damages

Turning to Plaintiff's request for prejudgment interest on his noneconomic damages, Plaintiff contends Colo. Rev. Stat. § 13-21-101 mandates an award. Section 13-21-101 "is known as the 'personal injury statute,' and governs the award of interest on damages '[i]n all actions brought to recover damages for personal injuries sustained by any person resulting from or occasioned by the tort of any other person, corporation, association, or partnership, whether by negligence or by willful intent of such other person, corporation, association, or partnership...'" *Romero,* 2017 WL 5900361, at *4 (quoting Colo. Rev. Stat. § 13–21–101(1)).

Defendants contend Plaintiff is not entitled to prejudgment interest on his noneconomic damages because this case involved property torts rather than personal torts. Dkt. 138 at pp.4-5. They also contend interest is inappropriate because the jury did not specify whether the damages were for mental and emotional pain or simply for inconvenience. *Id.* at p.6. Neither argument wins the day.

First, it is clear from both the plain language of the statute as well as Colorado case law that section 13-21-101 "was intended to provide interest based on the nature of injuries, i.e., 'for personal injuries,' rather than on the nature of the cause of action." *Romero,* 2017 WL 5900361, at *4 (citing Journal of Laws, Colo. Gen. Assembly, 18th Sess. 296–97 (1911)); *see also USAA v. Parker,* 200 P.3d 350, 353 (Colo. 2009) ("The plain language of [section 13-21-1201] provides that the nature of the damages sought by the plaintiff, rather than the source of the defendant's obligation to pay the plaintiff, triggers its application."). "An injury is personal when it impairs the well-being or the mental or physical health of the victim. In contrast, an injury is not personal when inflicted on property." *Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 610 (Colo. App. 2007) (cleaned up).

With respect to Defendants' argument that inconvenience cannot be considered a personal injury, the Court first notes the argument, yet again, is woefully underdeveloped; Defendants cite no support for this proposition. Furthermore, the Court cannot conceive of whom but a person could suffer from inconvenience, and therefore, it plainly falls under the rubric of personal injury as opposed to property. *See* Colo. Rev. Stat. § 13-21-102.5(2)(b) ("'Noneconomic loss or injury' means nonpecuniary harm for which damages are recoverable *by the person suffering the*

17

*direct or primary loss or injury*, including pain and suffering, *inconvenience*, emotional stress, and impairment of the quality of life.") (emphasis added).[9]

Plaintiff shall be awarded prejudgment interest at the rate of nine percent per annum on his noneconomic damages. Defendants do not contest Plaintiff's arguments regarding accrual or his calculations, and therefore, the Court considers the matter to be waived. The judgment shall be amended to include an award of interest, against each Defendant, on Plaintiff's noneconomic damages, which shall accrue until the date the judgment is satisfied.

*        *        *

For the reasons shared above, it is ORDERED:

1. Defendants' Motions for New Trial or to Amend Judgment (Dkts. 120, 122) are DENIED.

2. Plaintiffs' MOTION to Amend the Judgment for Treble Damages (Dkt. 125) is DENIED.

3. Plaintiff's Motion to Amend the Judgment for Pre-Judgment Interest (Dkt. 124) is GRANTED. Plaintiff is awarded prejudgment interest on his economic damages pursuant to Colo. Rev. Stat. § 5-12-102 in the amount of $144,719.62 against each Defendant. Plaintiff is also awarded prejudgment

---

[9] To the extent Defendants also contend the evidence was insufficient to support an award of noneconomic losses, the Court has previously addressed why such an argument fails and does not repeat itself here. *See supra* Section A.1.

interest on his noneconomic damages pursuant to Colo. Rev. Stat. § 13-21-101.[10]

DATED: June 27, 2024.

BY THE COURT:

S. Kato Crews
United States District Judge

---

[10] Because this amount accrues at nine percent per annum through the satisfaction of the judgment, the Court does not calculate a particular amount to be awarded. It shall be Plaintiff's responsibility to calculate the appropriate amount(s) for collection.

19